2026 IL App (4th) 260257-U

NOS. 4-26-0257, 4-26-0258, 4-26-0259, 4-26-0260 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is not
precedent except in the limited
circumstances allowed under Rule
23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 1, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| RICO C. BOOKER, | ) | Nos. 23CF293 |
| Defendant-Appellant. | ) | 23CF706 |
| | ) | 25CF357 |
| | ) | 25CF630 |
| | ) | |
| | ) | Honorable |
| | ) | Stephen A. Kouri, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Vancil and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The appellate court affirmed, finding the trial court did not err in denying
defendant pretrial release.

¶ 2           Defendant, Rico C. Booker, appeals the trial court's denial of his petition for
relief pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art.
110 (West 2024)). On appeal, defendant argues the court erred by (1) finding the proof was
evident or presumption great that he committed a detainable offense, (2) finding his pretrial
release posed a real and present threat to any person or the community, (3) finding no pretrial
release conditions could mitigate the threat he posed and that he was unlikely to comply with any
release conditions, and (4) not making individualized findings tailored to this specific case. We
affirm.

¶ 3                                    I. BACKGROUND

¶ 4          On July 28, 2025, the State charged defendant with one count of first degree murder in Peoria County case No. 25-CF-630 (720 ILCS 5/9-1(a)(2) (West 2022)). At that time, defendant was incarcerated and faced the following charges in three other Peoria County cases: unlawful possession with intent to deliver methamphetamine, a Class X felony (720 ILCS 646/60(a) (West 2022)), unlawful possession with intent to deliver a controlled substance, a Class X felony (720 ILCS 570/402(a)(2)(D) (West 2022)), unlawful possession of methamphetamine, a Class X felony (720 ILCS 646/60(a) (West 2022)), unlawful possession of a controlled substance, a Class 1 felony (720 ILCS 570/402(a)(2)(D) (West 2022)), and four counts of unlawful possession of a weapon by a felon (UPWF), a Class 3 felony (720 ILCS 5/24-1.1(a) (West 2022)), in case No. 23-CF-293; armed violence, a Class X felony (720 ILCS 5/33A-2(a) (West 2022)), UPWF, a Class 3 felony (720 ILCS 5/24-1.1(a) (West 2022)), unlawful possession of a controlled substance, a Class 1 felony (720 ILCS 570/402 (West 2022)), and unlawful possession of cannabis, a Class 4 felony (720 ILCS 550/4(d) (West 2022)), in case No. 23-CF-706; and unlawful possession with intent to deliver a controlled substance, a Class X felony (720 ILCS 570/401(a)(2)(A) (West 2024)), and unlawful possession with intent to deliver cannabis, a Class 2 felony (720 ILCS 550/5(e) (West 2024)), in case No. 25-CF-357. In case Nos. 23-CF-293 and 23-CF-706, defendant was released from custody after posting cash bail. However, his release was revoked after he violated the conditions of his release by, among other things, committing the new offenses charged in case No. 25-CF-357.

¶ 5          During a hearing on August 14, 2025, defendant requested a review of the revocation of his pretrial release. The State proffered the first degree murder charge arose from a deadly shooting that occurred on May 22, 2023. A witness informed officers "they saw an

Escalade and another SUV stopped at the intersection and heard three to four gunshots, and the Escalade took off." Other witnesses stated the shots came from the Escalade. Ring camera footage from a nearby house showed "the victim's vehicle stop at the intersection and the Escalade come up next to it in the wrong lane and take off very quickly." When the camera's owner gave the footage to law enforcement, she asserted the Escalade belonged to defendant. The victim's sister told law enforcement that defendant was involved in the shooting and that he was planning on leaving the state "so he could not be found." Multiple witnesses said the shooting was motivated by a dispute over drug territory.

¶ 6　　　　　　Surveillance video showed the Escalade pulling into a gas station parking lot prior to the shooting, and defendant could be seen exiting the vehicle. The Escalade stopped by a local school and dropped off a child, later identified as defendant's son. Bus surveillance footage showed the Escalade driving toward the location where the shooting occurred, and the shooting took place "minutes later." Defendant tried to sell the Escalade that same day. When officers searched the Escalade, they discovered a cartridge case that matched a cartridge case found at the scene of the shooting.

¶ 7　　　　　　The State proffered defendant received a GPS monitor as part of his release conditions in case No. 23-CF-706. Defendant violated his release conditions by leaving the state for four days without authorization, and there were "at least 35 dead battery alerts," many of which lasted for multiple hours. Defendant also refused to report to Peoria County pretrial services to be transferred to the Office of Statewide Pretrial Services (OSPS) system, despite being required to do so.

¶ 8　　　　　　In case No. 25-CF-357, a "significant" amount of drugs was found inside defendant's residence "all over the place," including open areas like the kitchen and living room.

Defendant's two children lived in the residence when the drugs were discovered, and the Illinois Department of Children and Family Services subsequently became involved.

¶ 9 According to a pretrial services bond report prepared in case No. 23-CF-293, defendant scored a 9 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R), which categorized him as a "high risk" for pretrial misconduct. Defendant's criminal history dated back to 2006 and contained five total criminal convictions, including two drug-related felony convictions. Defendant failed to appear for scheduled court dates on three separate occasions.

¶ 10 Defense counsel claimed defendant received permission to leave the state during the specific incident referenced by the State. Counsel argued, "[T]here isn't—not one eye witness that says that they saw [defendant] fire a firearm that killed the victim in this case. So there's some real questions [*sic*] about the strength of the case in this situation." Counsel insisted the State failed to prove by clear and convincing evidence defendant was a danger to the community, and he argued pretrial release conditions would mitigate any threat defendant posed.

¶ 11 The trial court granted the State's detention petition, finding it proved by clear and convincing evidence the proof was evident or presumption great that defendant committed a detainable offense, he posed a threat to the community, and no pretrial release conditions would mitigate that threat. The court specified it had considered "the evidence and arguments of counsel, the State's petition, the presumption of pretrial release, the risk assessment that was previously completed ***[,] and available conditions of pretrial release." The court concluded defendant posed a real and present threat "based upon the nature and circumstances of the offense as well as the defendant's history, character[,] and condition." The court also cited "the specific [articulable] facts of the case as outlined in the State's argument." The court asserted it

"specifically adopt[ed] and incorporate[d] the State's reasoning."

¶ 12    On January 22, 2026, the trial court conducted a detention review, after which it found defendant's continued detention was necessary.

¶ 13    This appeal followed.

¶ 14                                II. ANALYSIS

¶ 15    The Office of the State Appellate Defender, defendant's appointed counsel on appeal, did not file a supporting memorandum. Thus, defendant's petition for relief will serve as his argument on appeal. See Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). His petition alleges the trial court erred by (1) finding the proof was evident or presumption great that he committed a detainable offense, (2) finding he posed a real and present threat to the safety of any person or the community, (3) finding no release conditions could mitigate that threat, and (4) not making individualized findings specifically tailored to this case. We disagree.

¶ 16    Under section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2024)), it is presumed all criminal defendants are entitled to pretrial release. The State may seek a defendant's pretrial detention if he is charged with a detainable offense as enumerated in the Code and, after a hearing, the trial court finds his release would present "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," or he "has a high likelihood of willful flight to avoid prosecution." 725 ILCS 5/110-6.1(a)(1), (1.5), (8) (West 2024). The State must also show no condition or combination of conditions can mitigate the real and present threat the defendant's release poses to the safety of any person or persons or the community. 725 ILCS 5/110-6.1(e)(3)(i) (West 2024). The State bears the burden of proving "by clear and convincing evidence that any condition of [pretrial] release is necessary." 725 ILCS 5/110-2(b) (West 2024). "Decisions regarding release,

conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2024). Where, as here, the parties proceed solely by proffer at the detention hearing, we review the court's decision *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 17　　　　First, the State established by clear and convincing evidence the proof was evident or presumption great that defendant committed the detainable offense of first degree murder. See 725 ILCS 5/110-6.1(a)(1.5), (e)(1) (West 2024). According to the State's proffer, witnesses asserted they saw an Escalade and another vehicle next to each other at an intersection, heard "three to four gunshots," and observed the Escalade drive away. Ring camera footage showed the Escalade move into the wrong lane to pull alongside the SUV before leaving "very quickly." Earlier that morning, security footage showed defendant getting out of the same Escalade at a gas station, and defendant's child was dropped off at a local school by the Escalade's driver mere minutes before the shooting occurred. Security footage showed the Escalade driving away from the school toward the location of the shooting, which took place "minutes later." Defendant unsuccessfully tried to sell the Escalade later that day. A cartridge case recovered from the crime scene matched a cartridge case found inside the Escalade. Witnesses informed law enforcement that the Escalade belonged to defendant, he was involved in the shooting, he was making plans to leave the state, and the shooting was the culmination of a dispute over drug territory. This proffer was more than sufficient to meet the State's burden. See *Morgan*, 2025 IL 130626, ¶ 54; see also 725 ILCS 5/110-6.1(e) (West 2024)).

¶ 18　　　　Second, the State's proffer established defendant posed a threat to the community. The trial court specifically cited the nature and circumstances of the offense, as well as defendant's history, character, and physical condition. See 725 ILCS 5/110-6.1(g)(1), (2), (5)

(West 2024). The State charged defendant with first degree murder for allegedly shooting someone to death over a drug-related dispute. At that time, defendant had three other pending cases containing numerous felony counts involving drugs and weapons. According to the pretrial services bond report, defendant scored a 9 out of 14 on the VPRAI-R, which categorized him as a "high risk" for pretrial misconduct. Defendant's criminal history spans 20 years and includes two drug-related felony convictions and three failures to appear in court, all of which predate the four cases currently pending against him. Based on the incredibly serious and violent nature of the charged offense, defendant's criminal history, his character, and his physical condition, the court did not err in finding he posed a safety threat to any person or the community. See *Morgan*, 2025 IL 130626, ¶ 54; see also 725 ILCS 5/110-6.1(a)(1.5), (g)(1), (2). (5) (West 2024).

¶ 19　　　　Third, the record supports the trial court's determination that no combination of pretrial release conditions would mitigate the threat defendant poses. Defendant received pretrial release in case Nos. 23-CF-293 and 23-CF-706 after posting cash bail. His release conditions required him to wear a GPS monitor and remain in Illinois. However, defendant allowed his GPS monitor's battery to die at least 35 times, often for hours at a time. The State proffered that defendant left the state for four days without permission, although defendant claimed he received permission. Defendant was required to report for transfer into the OSPS system, but he refused to do so. As a felon, defendant was statutorily forbidden from possessing firearms and ammunition, but a cartridge case was discovered in the Escalade that allegedly belonged to him. See 720 ILCS 5/24-1.1(a) (West 2024). Additionally, in a search that ultimately led to the charges brought in case No. 25-CF-357, a "significant" amount of drugs was found out in the open inside his residence, where his children lived at the time. For all these reasons, the trial court did not err in finding no pretrial release conditions would mitigate the threat he posed because he was unlikely

to comply with any release conditions imposed. See *Morgan*, 2025 IL 130626, ¶ 54; see also 725 ILCS 5/110-6.1(e)(3)(i) (West 2024).

¶ 20    Finally, defendant argues the trial court failed to tailor its findings to this specific case when it adopted the State's reasoning, citing *People v. Whitaker*, 2024 IL App (1st) 232009. According to defendant, the appellate court in *Whitaker* "condemned" the trial court's decision to adopt and incorporate the State's reasoning into its detention determination and "reversed a detention order because the trial court simply accepted the State's framing and failed to articulate its own findings." However, our review of *Whitaker* reveals the appellate court affirmed the trial court's decision to deny pretrial release, finding the State met its burden under the Code. See *Whitaker*, 2024 IL App (1st) 232009, ¶¶ 69-78. While the appellate court mentioned the trial court's responsibility to make individualized findings, it did so in the context of an extensive discussion regarding the appropriate standard of review, during which it emphasized the trial court's superior position to make such findings. See *Whitaker*, 2024 IL App (1st) 232009, ¶¶ 43-68. Defendant's petition does not cite any portion of this discussion. Instead, it cites two paragraphs that broadly summarize the recent amendments to the Code and Rule 604(h). See *Whitaker*, 2024 IL App (1st) 232009, ¶¶ 32-33 (citing 725 ILCS 5/110-1.5, 2(a) (West 2022); Ill. S. Ct. R. 604(h) (eff. Oct. 19, 2023)). We denounce this slipshod research and misrepresentation of the appellate court's findings in *Whitaker*. In the future, defendant and his counsel will do well to cite cases that actually support their positions.

¶ 21    We find defendant's argument that the trial court failed to make individualized findings to be meritless. The court explicitly said it considered the State's petition for relief, the attorneys' proffers and arguments during the hearing, the pretrial bond services report prepared for case No. 23-CF-293, the available pretrial release conditions, and the case's specific

- 8 -

articulable facts. As previously discussed, the court found defendant posed a safety threat due to "the nature and circumstances of the offense as well as the defendant's history, character[,] and condition." Based on these considerations, in addition to the detailed reasoning presented by the State in its argument, the court denied defendant pretrial release. We find the court satisfied its statutory obligation to make individualized findings when deciding to deny pretrial release. See 725 ILCS 5/110-6.1(f)(7) (West 2024).

¶ 22                                        III. CONCLUSION

¶ 23         For the foregoing reasons, we affirm the trial court's judgment.

¶ 24         Affirmed.